UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

UNITED STATES OF AMERICA

V.                                                    16 CR 136 (CM)

HERNANDO ESTEVENS MONTOYA GUZMAN,

Defendant.

_____x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/28/2021

**DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

McMahon, U.S.D.J.:

On July 25, 2017 this Court sentenced Hernando Estevens Montoya Guzman to 151 months' imprisonment, in connection with his guilty plea to conspiring to distribute, and possess with intent to distribute, one kilogram and more of heroin oxycodone in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Montoya is presently incarcerated at FCI Fort Dix – his projected release date April 25, 2028.

Before the Court is Montoya's motion for compassionate release filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Montoya claims that he should be granted compassionate release based on a combination of (1) his health conditions, including asthma, obesity, hypertension, high cholesterol, and latent tuberculosis, and (2) the spread of COVID-19 at Fort Dix. (Def's Mot., Dkt. 172 at 1-2.)

The Government opposes Montoya's motion, arguing that consideration of the sentencing factors the Court must consider under 18 U.S.C. § 3553(a) counsels against a reduction in sentence.

Montoya's motion is denied.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] Until recently, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)  Medical Condition of the Defendant.—

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at 237.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a)

---

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

(ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Montoya Has Exhausted His Administrative Remedies

The government does not dispute that Montoya has exhausted his administrative remedies. Montoya submitted his request for compassionate release to the Warden of FCI Fort Dix on May 21, 2020, which the Warden denied on June 6, 2020. More than 30 days elapsed between the Warden's denial of Montoya's request and his application to this Court on the same grounds. The exhaustion requirement is satisfied.

### Montoya's Motion

Post *Brooker*, in the context of a compassionate release motion predicated on an inmate's poor health and the risk of contracting COVID-19 in prison, the Court may now recognize the obvious: An inmate (1) in a Bureau of Prisons Facility with a high rate of COVID-19 infections, and (2) who suffers from health conditions found by the Center for Disease Control to place a person at an increased risk of suffering a severe outcome from Covid-19, has met the threshold "extraordinary and compelling" standard warranting compassionate release.

The government concedes that Montoya's medical conditions meet the threshold "extraordinary and compelling reasons" requirement. Indeed, the government acknowledges that, "Under guidance issued by the CDC, the defendant's obesity renders him at an increased risk of severe illness form COVID-19." (Dkt. 174 at 5.) Two of Montoya's other conditions – hypertension and asthma – also appear on the CDC's list of conditions that can place individuals at a higher risk of severe illness from COVID-19.[3]

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 21, 2021).

FCI Fort Dix, which is is located in New Jersey, has had the highest number of inmate positives for COVID-19. As of this date, a total of 2015 inmates have tested positive for COVID-19, and there are currently two active cases (inmates and staff) at the facility.[4] A November outbreak was so severe that the United States Senators from New Jersey and a contingent of the state's congressional delegation called for the BOP to implement a testing strategy for all prisoners and staff and temporarily stop transfers between facilities.[5] The high rate of COVID-19 infections at Fort Dix, coupled with Montoya's medical conditions, may very well meet the standard of "extraordinary and compelling reasons" warranting early release.

However, even with these considerations in favor of granting compassionate release, the sentencing factors set forth at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, see 18 U.S.C. § 3582(c)(1)(A)—strongly counsel against any reduction in Montoya's sentence. Principal among those considerations are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

Montoya participated in an international narcotics conspiracy, for which he helped to coordinate the transport of heroin to the United States by drug mules who travelled from Colombia to the United States on commercial flights, and acted as the U.S.-based distributor of those heroin shipments. As I stated during his sentencing, "Mr. Montoya is obviously a sophisticated drug

---

[4] https://www.bop.gov/coronavirus/ (last visited Apr. 28, 2021).
[5] Karen Yi, *NJ Lawmakers Demand Answers on Fort Dix Coronavirus Outbreak*, Gothamist (Dec. 4, 2020), https://gothamist.com/news/nj-lawmakers-demand-answers-fort-dix-coronavirus-outbreak.

dealer, he is obviously someone who has ascended to a high level in an international drug organization, and he should be treated as such." (Tr. 11:15-18.)

At the time of his sentencing, Montoya had two prior convictions for drug-related crimes. In 2002, Montoya was convicted of criminal possession of a controlled substance – again, heroin – resulting in a sentence of 3 years' to life imprisonment. For reasons unknown, Montoya was released on parole after only six months. (PSR ¶ 34.) In 2009, Montoya pleaded guilty to money laundering after he was stopped with $19,000 of drug-related proceeds hidden in his car. Montoya was sentenced to 24 months' imprisonment and 2 years' supervised release. He was released from prison on August 25, 2011; his term of supervised release ran until August 24, 2013. (*Id.* ¶ 35.) Of particular interest to this Court, and as I articulated during the sentencing, is the fact that Montoya became involved in the present conspiracy to distribute heroin in April 2013, while he was still on his term of supervised release.

Given Montoya's history of recidivism – particularly the fact that he committed the crime for which he is presently incarcerated while on supervised release – I am not persuaded that the time he has already served is sufficient to deter him from committing future crimes. The Court is encouraged by Montoya's seemingly successful efforts to curb his substance abuse, as evidenced by his participation in drug education programming and a non-residential drug abuse program (Dkt. 172 at 14), and to obtain an education. But in the Court's view, those efforts cannot offset Montoya's criminal history and the harm he caused to the community. Montoya's sentence of 151 months' imprisonment was warranted at the time of sentencing, and it remains so today.

The motion for compassionate release is denied.

April 28, 2021

Colleen McMahon
District Judge